UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
INDIANA LABORERS PENSION FUND, : Civil Action No. 1:08-cv-05994-SAS
Individually and On Behalf of All Others :
Similarly Situated, : CLASS ACTION
:
: MEMORANDUM IN SUPPORT OF THE
Plaintiff, : MOTION OF INDIANA LABORERS
: PENSION FUND FOR APPOINTMENT AS
vs. : LEAD PLAINTIFF AND FOR APPROVAL
: OF SELECTION OF LEAD COUNSEL
FIMALAC, S.A., et al., :
:
Defendants. :
:
------------------------------------------------------x

I.      **PRELIMINARY STATEMENT**

Presently pending before this Court is a securities class action lawsuit (the "Action") brought on behalf of all U.S. citizens or residents who purchased Fimalac, S.A. ("Fimalac" or the "Company") common stock between July 26, 2006 and April 20, 2008, inclusive (the "Class Period"). The Action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78) and the Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

Institutional Investor Indiana Laborers Pension Fund ("Indiana Laborers") hereby moves this Court for an Order to: (i) appoint Indiana Laborers as Lead Plaintiff in the Action under Section 21D(a)(3)(B) of the Exchange Act; and (ii) approve Indiana Laborers's selection of the law firm of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") to serve as Lead Counsel.

This motion is made on the grounds that Indiana Laborers is the most adequate plaintiff, as defined by the PSLRA. Indiana Laborers is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA. *See Ferrari v. Impath, Inc.,* No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *10 (S.D.N.Y. July 15, 2004) (holding that the purpose behind the PSLRA is best achieved by encouraging institutional investors to serve as lead plaintiffs). Moreover, as an institutional investor, Indiana Laborers is accustomed to acting as a fiduciary and its experience in legal and financial matters will substantially benefit the class.

During the Class Period, Indiana Laborers incurred a substantial $869,620.57 loss on its transactions in Fimalac common stock. *See* Alba Decl., Ex. B.[1] To the best of its knowledge, this is

---

[1] References to the "Alba Decl., Ex. ___" are to the exhibits attached to the accompanying Declaration of Mario Alba Jr., dated September 2, 2008, and submitted herewith.

the greatest loss sustained by any moving class member or class member group who has brought suit or filed an application to serve as Lead Plaintiff in this Action. In addition, Indiana Laborers, for the purposes of this motion, adequately satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the putative class and that it will fairly and adequately represent the interests of the class.

## II.    FACTUAL BACKGROUND[2]

Fimalac is a France-based international financial services company, providing financial ratings and enterprise risk management solutions.

The complaint charges Fimalac and certain of its officers and directors with violations of the Exchange Act. Fitch Ratings, Ltd. ("Fitch"), a majority owned subsidiary of Fimalac, assigns credit ratings to structured finance transactions. The complaint alleges that, at the start of the Class Period, Fitch's core business practice of rating residential mortgage-backed securities ("RMBS") and collateralized debt obligation ("CDO") transactions was extremely profitable for Fitch, which enabled it to report strong growth, which, in turn, drove Fimalac's stock price to a Class Period high of €80.98 per share on May 22, 2007.

According to the complaint, however, defendants failed to disclose to investors during the Class Period that: (i) the information upon which Fitch based its ratings of RMBS and CDOs was misleading and in many cases fraudulent; (ii) to continue to collect fees for its ratings, Fitch was applying lax standards or no standards at all when issuing its RMBS and CDO ratings; and (iii) Fitch was failing to monitor the credit quality of RMBS and CDOs after issuing its initial ratings, as Fitch was obligated to do, and many of these securities had deteriorated badly after Fitch had issued its

---

[2] These facts are drawn from the allegations in the complaint.

ratings. Fitch is now under investigation by the New York Attorney General, the Connecticut Attorney General, the Ohio Attorney General and the SEC as a result of its practices of rating billions of dollars of securities without a reasonable basis for doing so and Fimalac's stock is trading at approximately 50% below its Class Period high.

## III.   ARGUMENT

### A.   Indiana Laborers Should Be Appointed Lead Plaintiff

#### 1.   The Procedure Required by the PSLRA

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Plaintiff caused the first notice regarding the pendency of this Action to be published on *Business Wire*, a national, business-oriented newswire service, on July 1, 2008. *See* Alba Decl., Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class who the Court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice...
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).  *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

### 2. Indiana Laborers Satisfies the "Lead Plaintiff" Requirements of the Exchange Act

#### a. Indiana Laborers Has Complied with the Exchange Act and Should Be Appointed Lead Plaintiff

The time period in which class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on September 2, 2008.  Pursuant to the provisions of the PSLRA, and within the requisite time frame after publication of the required notice on July 1, 2008, Indiana Laborers timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

Indiana Laborers has duly signed and filed a certification stating that it is willing to serve as a representative party on behalf of the class.  *See* Alba Decl., Ex. C.  In addition, Indiana Laborers has selected and retained competent counsel to represent itself and the class.  *See* Alba Decl., Ex. D.  Accordingly, Indiana Laborers has satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff and approval of selection of Lead Counsel as set forth herein, considered and approved by the Court.

### b. Indiana Laborers Is Precisely the Type of Lead Plaintiff Congress Envisioned When it Passed the PSLRA

The Congressional objective in enacting the lead plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. Indiana Laborers, as an institutional investor, is precisely the type of Lead Plaintiff Congress envisioned when it passed the PSLRA. *See Id*.

### c. Indiana Laborers Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, as evidenced by, among other things, the accompanying signed certification, *see* Alba Decl., Ex. C, Indiana Laborers incurred a substantial $869,620.57 loss on its transactions in Fimalac common stock. *See* Alba Decl., Ex. B. Indiana Laborers thus has a significant financial interest in this case. Therefore, Indiana Laborers satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this Action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### d. Indiana Laborers Otherwise Satisfies Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party

may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Lax v. First Merchants Acceptance Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *20, (N.D. Ill. Aug. 6, 1997). Indiana Laborers satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Sofran v. Labranche & Co.,* 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ("The possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact"). The requirement that the proposed class representatives' claims be typical of the claims of

the class does not mean, however, that the claims must be identical. *See Ferrari,* 2004 U.S. Dist. LEXIS 13898, at *18.

Indiana Laborers satisfies this requirement because, just like all other class members, it: (1) purchased Fimalac common stock during the Class Period; (2) was adversely affected by defendants' false and misleading statements; and (3) suffered damages as a result thereof. Thus, Indiana Laborers's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of Indiana Laborers to represent the class to the existence of any conflicts between the interest of Indiana Laborers and the members of the class. The Court must evaluate adequacy of representation by considering: (i) whether the class representatives' claims conflict with those of the class; and (ii) whether class counsel is qualified, experienced, and generally able to conduct the litigation. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004).

Here, Indiana Laborers is an adequate representative of the class. As evidenced by the injuries suffered by Indiana Laborers and the class, the interests of Indiana Laborers are clearly aligned with the members of the class, and there is no evidence of any antagonism between Indiana Laborers's interests and those of the other members of the class. Further, Indiana Laborers has taken significant steps which demonstrate it will protect the interests of the class: it has retained competent and experienced counsel to prosecute these claims. In addition, as shown below, Indiana Laborers's proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Indiana Laborers *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### B. The Court Should Approve Indiana Laborers's Choice of Counsel

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. In that regard, Indiana Laborers has selected the law firm of Coughlin Stoia as Lead Counsel, a firm which has substantial experience in the prosecution of shareholder and securities class actions, including serving as lead counsel in *In re Enron Corp. Sec. Litig.*, No. H-01-3624, 2005 U.S. Dist. LEXIS 39867 (S.D. Tex. Dec. 22, 2005), in which Coughlin Stoia has obtained recoveries to date which represent the largest recovery ever obtained in a shareholder class action. *See* Alba Decl., Ex. D. Specifically, the court in *Enron* stated:

> The firm is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate. Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities is evident throughout this suit.

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp 2d 644, 675 (S.D. Tex., 2006).

Accordingly, the Court should approve Indiana Laborers's selection of counsel.

### IV. CONCLUSION

For all the foregoing reasons, Indiana Laborers respectfully requests that the Court: (i) appoint Indiana Laborers as Lead Plaintiff in the Action; (ii) approve its selection of Lead Counsel as set forth herein; and (iii) grant such other relief as the Court may deem just and proper.

DATED: September 2, 2008                COUGHLIN STOIA GELLER
                                                                      RUDMAN & ROBBINS LLP
                                                                      SAMUEL H. RUDMAN
                                                                        DAVID A. ROSENFELD
                                                                        MARIO ALBA JR.

                                                                        /s/ *Mario Alba Jr.*
                                                                        MARIO ALBA JR.

        58 South Service Road, Suite 200
        Melville, NY  11747
        Telephone:  631/367-7100
        631/367-1173 (fax)

[Proposed] Lead Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I, Mario Alba Jr., hereby certify that on September 2, 2008, I caused a true and correct copy of the attached:

> Notice of Motion For Appointment As Lead Plaintiff And For Approval Of Selection Of Lead Counsel;
>
> Memorandum In Support Of The Motion Of Indiana Laborers Pension Fund For Appointment As Lead Plaintiff And For Approval Of Selection Of Lead Counsel; and
>
> Declaration Of Mario Alba Jr. In Support Of The Motion Of Indiana Laborers Pension Fund For Appointment As Lead Plaintiff And For Approval Of Selection Of Lead Counsel

to be served: (i) electronically on all counsel registered for electronic service for this case; and (ii) by first-class mail to any additional counsel on the attached service list.

　　　　　　　　　　　　　　　　　　　　　/s/ *Mario Alba Jr.*
　　　　　　　　　　　　　　　　　　　　　Mario Alba Jr.

FIMALAC

Service List - 8/28/2008    (08-0136)

Page 1 of 1

**Counsel For Defendant(s)**

Martin Flumenbaum
Andrew G. Gordon
Audra J. Soloway
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY  10019-6064
   212/373-3000
   212/757-3990 (Fax)

**Counsel For Plaintiff(s)**

Samuel H. Rudman
David A. Rosenfeld
Mario Alba, Jr.
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY  11747
   631/367-7100
   631/367-1173 (Fax)